[No. 6210. Decided September 27, 1906.]

Wenzel Strunz et al., *Appellants*, v. Frank Hood et al., *Respondents*, James Sullivan, *Appellant*.[1]

Boundaries—Establishing Lost Corners—Appointment of Commissioner—Report—Exceptions—Evidence Contradicting Report—Exclusion. In a proceeding to reestablish a lost corner by a survey, it is not error, upon receiving the report of the commissioner appointed to make the survey, to refuse to admit additional evidence as to whether the monuments were lost, and contradicting the report in that particular, where that issue had been previously determined before the appointment of the commissioner.

Same—Method of Reestablishment—Following Conceded Monuments and Field Notes. In a proceeding to reestablish a lost corner by a survey, if the actual location of the monuments can be ascertained, it is the duty of the surveyor to relocate the lost corner by following the government field notes, proceeding from conceded monuments and corners.

New Trial—Newly Discovered Evidence—Sufficiency. A new trial for newly discovered evidence as to the location of a lost corner is properly denied where such evidence is vague and indefinite.

Judgment—Default—Vacation—Sufficiency of Showing. A motion to vacate a default judgment entered in a proceeding to establish a lost corner is properly denied where, upon the showing made, it appears that the corner was lost and defendant's evidence as to its location was too indefinite to warrant findings in support of his contention.

Judgment — Default — Right to Vacation. Under Bal. Code, §§ 4878, 4879, a nonresident defendant is not entitled to have a default set aside, and to defend as a matter of right at any time before judgment, except upon sufficient cause shown.

[1]Reported in 87 Pac. 45.

SAME—BOUNDARIES—ACTION TO ESTABLISH. An action to have a lost corner established by survey is not an action for the recovery of real property, within the meaning of Bal. Code, § 5518, allowing a nonresident defendant to appear after default and defend at any time before judgment.

COSTS—BOUNDARIES—ACTION TO ESTABLISH. In an action to re-establish a lost corner it is error to tax the costs to the successful party, but the same should be equitably apportioned by an equal division between the parties

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered September 22, 1905, upon confirming the commissioner's report, establishing a lost boundary. Modified.

*P. C. Shine,* for appellant Sullivan.

*R. J. Danson,* for appellants Strunz, contended, *inter alia,* that the power of the court or commissioner extended only to locating and establishing lost or doubtful boundaries, and they can in no event disturb title or establish new lines.   5 Cyc. 946; *Martz v. Williams,* 67 Ill. 306; *Allmon v. Stevens,* 68 Ill. 89; *Irvin v. Rotramel,* 68 Ill. 11; *Walker v. Boyer,* 121 Ga. 300, 48 S. E. 916; *Amos v. Parker,* 88 Ga. 754, 16 S. E. 200; *Crawford v. Wheeler,* 111 Ga. 870, 36 S. E. 954; *Squire v. Greer,* 2 Wash. 209, 26 Pac. 222; *Cadeau v. Elliott,* 7 Wash. 205, 34 Pac. 916; *Thayer v. Spokane County,* 36 Wash. 63, 78 Pac. 200; *Randall v. Burk Township,* 4 S. D. 337, 57 N. W. 4; *Broll v. Wishert* (Tex. Civ. App.), 79 S. W. 1089; *Hess v. Meyer,* 73 Mich. 259, 41 N. W. 422; *Trinwith v. Smith,* 42 Ore. 239, 70 Pac. 816; *Vandusen v. Shively,* 22 Ore. 64, 29 Pac. 76; *Greer v. Squire,* 9 Wash. 359, 37 Pac. 545; *Arneson v. Spawn,* 2 S. D. 269, 49 N. W. 1066; *Whitcomb v. Dutton,* 89 Me. 212, 36 Atl. 67; *Robinson v. Laurer,* 27 Ore. 315, 40 Pac. 1012. The question is not where the line ought to have been located, but where it was in fact located.   *Squire v. Greer,* 2 Wash. 209, 26 Pac. 222; *Doolittle v. Bailey,* 85 Iowa 398, 52 N. W. 337; *Trinwith v. Smith,* 42 Ore. 239, 70 Pac. 816; *Climer v. Wallace,*

28 Mo. 556, 75 Am. Dec. 135; *Newton v. Templeman*, 115 Iowa 643, 89 N. W. 24. If the monuments are destroyed and their location cannot be identified, the next best evidence is the field notes. *Stangair v. Roads*, 41 Wash. 583, 84 Pac. 405; *Cadeau v. Elliott*, 7 Wash. 205, 34 Pac. 916; *Robinson v. Laurer*, 27 Ore. 315, 40 Pac. 1012. If the government stakes or monuments can be found, or the place where they originally were placed can be identified, they control in all cases. *Arneson v. Spawn*, 2 S. D. 269, 49 S. W. 1066, 39 Am. St. 369; *Hess v. Meyer*, 73 Mich. 259, 41 N. W. 422; *Randall v. Burk Township*, 4 S. D. 337, 57 N. W. 4; *Stangair v. Roads*, 41 Wash. 583, 84 Pac. 405.

*Munter & Jesseph*, for respondents.

Crow, J.—This action was instituted by the plaintiffs Wenzel Strunz and Mary Strunz, his wife, under Bal. Code, §§ 5667, 5669 (P. C. §§ 3285, 3287), to reestablish certain lost corners and a lost boundary line between two sections of land in Spokane county. The plaintiffs alleged that said line between sections 2 and 3 of township 26, north of range 45 E, W. M., had been lost and was uncertain; that plaintiffs are the owners of certain subdivisions constituting the fractional southwest quarter of section 2; that the defendant Joseph Sullivan is the owner of the northwest quarter of said section 2; that the defendants Hood and wife are the owners of lots 1, 4, 5 and 6, of section 3, being the only portion of said section which can be affected by said boundary line. The defendants Rebecca E. McCall, Joseph L. Rose, Nancy J. Rose, and the Pennsylvania Mortgage and Investment Company, who were alleged to be the owners of the east half of section 2, made default. The defendant James Sullivan was served by publication and defaulted for nonappearance. The defendants Hood and wife denied that said dividing line was lost or uncertain.

On October 4, 1904, a trial was had to determine whether said line had become lost and uncertain. Both parties con-

ceded that the government corner post at the northeast cor-
ner of section 3 and the northwest corner of section 2 was
in existence and could be accurately located. The evidence
disclosed that a portion of the southwest quarter of section
2, and the south and west line of that part of section 3 here
involved were bounded by Lake Newman, a meander line hav-
ing been run along said lake at said points by the United
States government surveyors. It further appeared that,
when the original government survey was made, a meander
corner post had been established on the shore of said lake
at the point where the line between sections 2 and 3 inter-
sected said meander line, but that this monument had been
lost. At the trial the plaintiffs produced numerous witnesses
to show that this monument could not be found or located,
while the defendants Hood and wife attempted to show that
said corner had been located at the south end of a dividing
line run in 1903 by one Stolzenberg, a surveyor employed
jointly by plaintiffs and said defendants Hood and wife.

The trial court made findings of fact, from which it ap-
pears that said adjoining sections 2 and 3 both abut upon
that body of water known as Newman Lake, which so cuts
them as to cause the north and south dividing line between
them to be less than one mile in length: that said sections
were included in a survey made by the United States gov-
ernment in August, 1880; that in said survey a corner post
was established at the northwest corner of section 2, being
the northeast corner of section 3, and that the field notes of
said survey also show that a quarter post was established
on said line, forty chains south of said initial corner; that
said field notes further show that a meander post was also
fixed and established where said dividing line ran into said
Newman Lake, and that said dividing line between said sec-
tions 2 and 3 connected said three posts and was and is the
dividing line between said two sections; that said quarter
post and said meander corner post had both been lost and

obliterated, and that their location cannot be ascertained; that the plaintiffs and said defendants Hood and wife cannot agree upon the location of said lost quarter post and meander corner post, and that one competent surveyor would be ample as a commissioner to establish said boundary. Upon said findings the court entered a preliminary order appointing Joseph M. Snow, a competent and practical surveyor, as a commissioner to survey, erect, establish, and properly mark the quarter corner post, and the meander corner post, on the dividing line between said sections.

On April 14, 1905, the commissioner made a written report, from which it appears that he did not succeed in finding the original government quarter post or the original government meander post; that he did find the original government post at the northwest corner of section 2, and the northeast corner of section 3: that from this point he ran a random line in a southerly direction to the shore of Newman Lake; that having done so, he made a careful search along this random line for a distance of two hundred feet on each side, but that said search failed to show any trace or mark to indicate that the section line had ever been run or marked on the ground; that afterwards he ascertained the true course of the random line by a solar observation. and then established a true line running due south from said corner of sections 2 and 3, on the north boundary of the township; that at a point 2,640 feet south of said section corner, he established a quarter section corner between sections 2 and 3, and marked the same by setting a granite stone; that at a point 4,880 feet south of said corner of sections 2 and 3 and at a point twenty feet north of high water mark on the shore of Newman Lake, he established the meander corner and marked the same by setting a granite stone. The plaintiffs filed written exceptions to this report. On July 7, 1905, the defendant Sullivan moved the court to vacate the default entered against him, supporting his motion

by affidavits which appear in the record. Afterwards the report of the commissioner, the exceptions of the plaintiffs thereto, and the motion of the defendant Sullivan to vacate the default came on for hearing, at which time the trial court confirmed and approved the report of the commissioner and denied the motion to vacate said default. The plaintiffs' motion for a new trial having been overruled, judgment was entered establishing the boundary line, the quarter section corner and the meander corner, as shown and fixed by said commissioner's report. The plaintiffs Strunz and wife have appealed from said final judgment, and the defendant Sullivan has also appealed from said final judgment and from the order denying his motion to vacate said default.

The appellants Strunz and wife make numerous assignments of error involving the following contentions: (1) Error of the trial court in refusing to admit additional evidence after the commissioner's report had been made; (2) error in overruling appellants' exceptions to said report; (3) error in denying appellants' motion for a new trial; (4) error in taxing all costs against the appellants; and (5) error in establishing the boundary line as marked by said commissioner.

At the preliminary hearing, the appellants Strunz and wife earnestly endeavored to show that no monuments locating the quarter section corner or the meander corner could be found; also that the lines previously run by various surveyors, one of whom had been jointly employed by themselves and the respondents Hood, were incorrect. After the report of the commissioner had been filed, and the appellants Strunz and wife had interposed their exceptions, they asked permission to introduce further evidence for the purpose of showing that their exceptions were well taken, and that the locations of said original government quarter post and said original government meander corner post could be respectively found, ascertained and established at points about 170

feet and 356.65 feet west of the points reported by Commissioner Snow, and they now contend that the trial court erred in refusing said offer. The evidence which appellants then tendered was afterwards specifically detailed in the affidavits presented in support of their motion for a new trial. The issue as to whether the monuments and boundaries were lost had been previously tried, and there is nothing in the report of the commissioner inconsistent with the findings then made. Under some circumstances it might be proper to admit additional evidence, when the report of the commissioner and the exceptions thereto come on for hearing, but we fail to see any reason for doing so in this case, and conclude that the trial court did not err in refusing the offer made by the appellants. The report of the commissioner explicitly detailed the methods adopted by him for discovering the true location of the government monuments and for reestablishing the lost quarter section corner and meander corner. Were we to consider the additional evidence offered by the appellants as disclosed by the affidavits presented in support of their motion for a new trial, our conclusion would nevertheless be that the meander corner and the quarter section corner were both lost, and could only be established in the manner adopted by the commissioner.

Appellants correctly contend that a court or a court commissioner cannot correct the United States government surveys, or establish government corners at points other than those fixed by the government surveyors; that in any attempt to reestablish an original survey the purpose should be to follow the footsteps of the government surveyor as nearly as possible, and that when there is any variance between field notes and monuments as set up by the United States government surveyors, the monuments must prevail. It was undoubtedly the duty of the commissioner to ascertain if possible where the original government monuments had been actually located and established, rather than where he might

think they ought to be located or established. The commissioner's report, however, shows that, after a most diligent search he was unable to find the original quarter corner or meander corner posts or any traces thereof, and the evidence of appellants' and respondents' witnesses, including several competent surveyors, shows that they were likewise unable to find the same. This being true, it became the duty of the commissioner to reestablish the lost line and relocate the lost quarter corner and lost meander corner. He did this by proceeding from conceded monuments and corners fixed by the government surveyors, and by following the government field notes, and the trial court acted properly in approving his action and report.

We also conclude that no error was committed in denying the motion for a new trial. The appellants contend that they are entitled to a new trial on account of newly discovered evidence, which they now claim will show that the original meander corner can be found and located at a point some 356.65 feet west of the meander corner established by the commissioner. They do not claim, however, that any monument or any traces thereof still remain at the point mentioned. We have examined appellants' newly discovered evidence as disclosed in their affidavits, and conclude that it is too vague, indefinite and uncertain to fix the meander corner in accordance with their present contention, at a point 356.65 feet west of the true north and south line established by the commissioner. Evidence to sustain such a contention should be most clear and convincing.

The appellant Sullivan contends that the trial court erred in denying his motion to vacate the default entered against him. He concedes that he was absent from the state at the time the summons was published. The default was entered on July 25, 1904. The affidavits presented in support of his motion show that he returned to the state some time in the following November, and then knew of the pendency of

this action, and that he also knew Commissioner Snow was making his survey. He filed no motion to set aside the default until July 7, 1905, at which time he did not tender any answer, but in his own affidavit supporting his motion, alleged that he had stated all the facts with reference to said proceeding and said boundary line to his attorney, and was advised by him that he had a good and meritorious defense. His affidavit shows his only contention to be that the original government meander corner post was located some 356.65 feet west of the point fixed by the report of Commissioner Snow. He does not attempt to show that any monument still remains or can be found at that point. On the contrary a clear inference arises from his affidavits that it does not now exist. It will thus be seen that he is now proposing to ascertain and fix a corner and a lost monument by vague and uncertain evidence not sufficient to sustain findings which he would necessarily ask. Were we to concede everything for which he contends in his affidavits and his application to set aside the default, we would still conclude that his showing is insufficient. His application was made before entry of final judgment, and he contends that, under Bal. Code, § 4880 (P. C. § 338), it should have been granted as a matter of right. This section provides that where a defendant has not been served personally in the cases provided in Bal. Code, §§ 4878 and 4879 (P. C. §§ 336, 337), he shall on application *and sufficient cause shown* at any time before judgment, be allowed to defend. The legislature in enacting these sections, intended that a defendant should not be allowed to defend except upon sufficient cause shown. We do not think any such showing has been made by the appellant Sullivan.

The appellant Sullivan also claims that he is entitled to have the default vacated by reason of the provisions of Bal. Code, § 5518 (P. C. § 1154). That section, however, refers only to an action for the recovery of the possession of real property. This is not such an action. This action was

commenced by the appellants Strunz and wife to reestablish a lost boundary line, and not to recover possession of real property.  No error was committed by the trial court in refusing to vacate said default.

Appellants Strunz and wife further contend that the trial court erred in taxing against them the entire costs of this proceeding.  In *Cadeau v. Elliott*, 7 Wash. 205, 34 Pac. 916, we held that an equitable apportionment of costs in a case of this character would be an equal division of the same between the parties, and that rule should prevail here.

It is ordered that the judgment of the superior court be modified to the extent of taxing the costs equally between the appellants Strunz and wife and the respondents Hood and wife, and as so modified said judgment will be affirmed.  The respondents Hood and wife will recover their costs on this appeal.

MOUNT, C. J., ROOT, DUNBAR, FULLERTON, and HADLEY, JJ., concur.